Linda F. BREAKFIELD *v.* IN & OUT, INC.,
and Zenith Insurance Company

CA 02-220 88 S.W.3d 861

Court of Appeals of Arkansas
Division IV
Opinion delivered November 6, 2002

*Sheila F. Campbell*, for appellant.

*Thomas W. Mickel, P.A.*, by: *Thomas W. Mickel*, for appellee.

KAREN R. BAKER, Judge. Appellant, Linda Breakfield, brings this appeal from a decision of the Workers' Compensation Commission finding that her healing period ended when she abandoned her course of treatment. The Commission found that appellant abandoned her course of treatment and thus failed to prove that she remained within her healing period beyond the date of her last documented medical treatment on February 5, 1999. We affirm.

Appellant, sustained an incapacitating back injury on October 23, 1996. Her original requests for appellee's insurance carrier to pay medical expenses, including epidural steroid injections, were denied. Medical reports dated December 22, 1998, contain notes indicating that the claims had been denied initially because the matter had been in litigation but that the insurance company was now asking Ms. Breakfield's physician, Dr. Greenspan, to address certain issues concerning Ms. Breakfield's condition and

treatment. One issue Dr. Greenspan was asked to address was surgical possibilities. Records further indicate that Dr. Greenspan concluded that Ms. Breakfield would probably benefit from surgical decompression and that Ms. Breakfield was receptive to undergoing the surgery. On January 19, 1999, Dr. Greenspan proposed performing a series of three translumbar epidural injections with physical therapy to determine whether or not the claimant was a surgical candidate. The physician's note indicates that if this treatment helped the claimant, she would be a good candidate for decompression surgery. Significantly, handwritten notes in the medical records stated that a conversation occurred on that date between personnel in Dr. Greenspan's office and appellee's insurance company and that the epidural steroid injections had been approved by the insurance company.

Ms. Breakfield received the first of the scheduled injections on February 5, 1999; however, the medical records indicate that she failed to show up for her follow-up appointment on February 11, 1999. Although she testified at trial that Dr. Greenspan had recommended surgery in July of 1999, no other medical records were introduced that indicated that she had any medical contact with Dr. Greenspan after failing to make the February 11, 1999 appointment. Ms. Breakfield also explained at trial her belief that what had prevented her from having the surgery was the insurance company's refusal to pay for the surgery.

The Commission found that Ms. Breakfield abandoned her medical treatment on February 11, 1999, relying upon three critical facts from the medical records: (1) Dr. Greenspan proposed three epidural steroid injections to determine what to do next; (2) appellee was willing to pay for the treatment; (3) Ms. Breakfield failed to show up for the February 11, 1999 follow-up appointment and never rescheduled. The Commission therefore concluded that Ms. Breakfield had abandoned her medical treatment on February 11, 1999, and failed to establish that she remained within her healing period after February 5, 1999, the last day she received medical treatment for her condition. However, the Commission also found that Ms. Breakfield was entitled to return

to Dr. Greenspan, if she so chose to do so, to determine what additional treatment, if any, that he might propose for treatment of her compensable back injury. The Commission noted that even though it had been nearly three years from the time Ms. Breakfield last saw Dr. Greenspan in February 1999 to the date of the Commission's decision, medical reports indicated that Dr. Greenspan never released Ms. Breakfield from additional care altogether.

■ ■ Temporary disability is that period within the healing period in which an employee suffers a total or partial incapacity to earn wages. *Thurman v. Clarke Indus., Inc.*, 45 Ark. App. 87, 872 S.W.2d 418 (1994). The healing period is defined as that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. *Arkansas Highway and Transp. Dep't v. McWilliams*, 41 Ark.App. 1, 846 S.W.2d 670 (1993). The determination of when the healing period ends is a factual determination to be made by the Commission. *Thurman v. Clarke Indus., Inc.*, 45 Ark.App. at 90-91, 872 S.W.2d at 421. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Id.; Mad Butcher, Inc. v. Parker*, 4 Ark.App. 124, 628 S.W.2d 582 (1982). Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Arkansas Highway and Transp. Dep't v. McWilliams, supra; J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark.App. 200, 785 S.W.2d 51 (1990).

■ When reviewing a decision of the Workers' Compensation Commission, the Court of Appeals views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Rice v. Georgia Pacific Corp.*, 72 Ark.App. 148, 35 S.W.3d 328 (2000). This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* The issue on appeal is not whether the appellate court might have reached a different result or

whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Mfg. v. Baker,* 337 Ark. 94, 989 S.W.2d 151 (1999).

 We conclude that there is substantial evidence to support the Commission's finding that Ms. Breakfield had abandoned her course of treatment by failing to return to her treating physician after the first of the three prescribed epidural injections. The evidence was that although appellee's insurance company refused to pay for the injections when they were first requested, the company had been in contact with the doctor's office and not only agreed to pay for the procedures, but was requesting Ms. Breakfield's physician to evaluate surgical possibilities. Although Ms. Breakfield testified as to her belief that they were refusing to pay, she offered no evidence to explain how she had reached that conclusion or to contradict the evidence that the company was paying for procedures at the time that she failed to continue the course of treatment suggested by her treating physician. The mere existence of a form of treatment that could improve a claimant's condition does not prohibit a finding that a claimant's healing period had ended when the claimant refuses to undergo that treatment. *See Thurman v. Clarke Indus., Inc., supra.* In this case, the claimant refused to undergo the treatment based upon her apparently mistaken belief that the insurance company would not pay for treatment. Appellee produced substantial evidence to support the Commission's finding that this refusal was unjustified. Accordingly, we affirm.

ROBBINS and VAUGHT, JJ., agree.