2010 Ark. App. 808

**Kim GLADDEN, Appellant**

v.

**GEORGIA PACIFIC CORPORATION and Sedgwick Claims Services, Appellees.**

**No. CA 10–462.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

Steven R. McNeely, The McNeely Law Firm PLLC, Little Rock, for appellant.

Betty J. Hardy, Friday, Eldredge & Clark L.L.P., Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Kim Gladden appeals the opinion of the Workers' Compensation Commission finding that he failed to prove by a preponderance of the evidence that he sustained a compensable injury while employed with appellee Georgia Pacific Corporation (GP). Gladden argues that the Commission's decision denying his claim for a left-shoulder injury based upon a preexisting condition is not supported by substantial evidence. Because the Commission failed to determine whether Gladden suffered an aggravation of a preexisting condition, we reverse and remand.

Gladden, a forty-six-year-old welder, began working for GP in June 2004 as a millwright. On December 12, 2007, Gladden and another employee were on a catwalk changing a gear that weighed 134 pounds. Wearing gloves that had some oil on them, Gladden picked up the gear. It slipped out of his hands, and Gladden tried to catch it so that it would not fall to the ground. The weight of the gear pulled Gladden down to the catwalk, which Gladden testified strained his upper back and shoulders. Gladden immediately reported the incident to the human-resource manager, who convinced Gladden to go home and take some Aleve.

Due to pain in his shoulders, Gladden sought medical treatment at the emergency room the following evening. The medical reports generated from this visit reflected that Gladden complained of right shoulder and neck pain. An x-ray of Gladden's right shoulder showed "[n]o definite evidence for acute findings." He was given a prescription for pain, a sling for his right arm, and a two-week light-duty work restriction. Gladden returned to work; however, he received follow-up medical care from Dr. Michael Payne on December 18, 2007. Dr. Payne's report reflected that

Gladden complained of right-shoulder pain as a result of his accident at work, but an MRI of the right shoulder showed no definite tear of the rotator cuff.

Gladden continued to have pain and was treated by Dr. Ethan Shock. Dr. Shock's January 17, 2008 records reflected that Gladden was experiencing pain in his neck and both the right and left shoulders. A cervical MRI was performed in February 2008, and the results showed, among other findings, a C6–7 posterior broad-based disc herniation. Dr. Shock stated on May 1, 2008, that "I do not think that [Gladden] has a [right-]shoulder injury. I believe his symptoms are consistent with the findings of the cervical disk injury, and examination and radiological tests have shown the [right] rotator cuff and shoulder to be intact."

On September 12, 2008, Gladden had surgery on his neck, performed by Dr. Tim Burson. This was accepted as compensable by GP.[1] Following neck surgery, Gladden continued to complain of shoulder pain, and he sought medical treatment from Dr. John Lytle. Gladden related the cause of his bilateral shoulder pain to the December 2007 work incident. Dr. Lytle recommended an MRI of the left shoulder, which showed a full-thickness rotator-cuff tear with significant retraction. Dr. Lytle recommended surgery on the left shoulder, initially opining that it was caused by the incident that occurred at GP in December 2007.[2] The surgery was performed on January 29, 2009. In June 2009, Dr. Lytle had not released Gladden to return to work. However, Gladden testified that his left shoulder was significantly improved. The left-shoulder injury and the medical treatment for same were controverted by GP.

The administrative law judge found that Gladden failed to prove that his shoulder injuries were compensable. Regarding the right-shoulder injury, the ALJ found that there were no objective findings to support it. As for the left-shoulder injury, the ALJ found that Gladden reported pain in his left shoulder within a month of the incident and that the reason he did not receive treatment for the injury immediately was because he was receiving treatment for his neck and right-shoulder injuries. The ALJ also noted that there were objective findings supporting the left-shoulder injury as the MRI showed a full-thickness rotator-cuff tear.

Despite these findings, the ALJ ultimately found that Gladden failed to establish that the left-shoulder injury arose out of and in the course of his employment with GP on December 12. This decision was based on the ALJ's conclusion that Gladden had a preexisting condition in his left shoulder. Questioning the credibility of Gladden, the ALJ cited Gladden's testimony under oath that he had never had problems with his left shoulder prior to December 2007, which conflicted with prior medical records.[3] The ALJ also point-

1. A functional-capacity evaluation was performed on January 22, 2009, and the results demonstrated that Gladden could perform work at the medium physical-demand classification. On February 10, 2009, Dr. Burson opined that Gladden reached maximum medical improvement, issuing him a ten-percent impairment rating to the body as a whole. The rating was accepted and paid by GP.

2. Dr. Lytle later retracted his opinion that the incident at Gladden's work was the cause of his left-shoulder injury; however, Dr. Lytle ultimately opined that the incident in December 2007 aggravated Gladden's left-shoulder condition.

3. The medical evidence included multiple references to problems Gladden had with his left-shoulder prior to December 12, 2007. In February 2002, he complained to his doctor of left-shoulder pain. In an October 2002 report, it was stated that Gladden had arthritis in both shoulders. In December 2004, he complained of pain in his neck and stiffness

ed to Dr. Lytle's deposition testimony that Gladden denied that he had experienced left-shoulder problems prior to December 2007 when giving his medical history. The ALJ further found that Gladden did not report left-shoulder complaints to the emergency-room physicians on December 13, 2007, and did not list a left-shoulder injury on the Workers' Compensation Commission Form AR–N. On appeal, the Commission affirmed and adopted the ALJ's opinion.

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Galloway v. Tyson Foods, Inc.,* 2010 Ark. App. 610, at 5, 378 S.W.3d 210. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Galloway,* 2010 Ark. App. 610, at 5, 378 S.W.3d 210. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

Gladden argues on appeal that the Commission's denial of his claim of his left-shoulder injury[4] based upon a preexisting

condition was error because (1) it was based on speculation and conjecture as the only evidence in the record of an accident was the compensable one; (2) Gladden was able to work prior to the compensable incident but not afterward; and (3) an aggravation to a preexisting injury can be compensable.

Arkansas Code Annotated section 11–9–102(4)(A)(i) (Supp.2009) defines a compensable injury as

> [a]n accidental injury causing internal or external physical harm to the body … arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

A compensable injury must be established by medical evidence supported by objective findings. Ark.Code Ann. § 11–9–102(4)(D). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16). Further, an employer takes an employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Heritage Baptist Temple v. Robison,* 82 Ark.App. 460, 120 S.W.3d 150 (2003). An aggravation of a preexisting noncompensable condition by a compensable injury itself is compensable. *Oliver v. Guardsmark,* 68 Ark.App. 24, 3 S.W.3d 336 (1999). An aggravation, being a new injury with

---

in his shoulders. In July 2005, he complained of pain in both shoulders.

4. Gladden's notice of appeal includes the Commission's decision related to both shoulder injuries. However, in the argument section of his brief on appeal, he discusses only the Commission's findings concerning the left-shoulder injury. Therefore, he has abandoned his appeal of the Commission's deci-

sion denying his claim for the right-shoulder injury. *Tri–Eagle Enters. v. Regions Bank,* 2010 Ark. App. 64, 373 S.W.3d 399 (holding that arguments not made on appeal are considered abandoned) (citing *DePriest v. AstraZeneca Pharms.,* 2009 Ark. 547, 351 S.W.3d 168; *Alvarado v. St. Mary–Rogers Mem. Hosp.,* 99 Ark.App. 104, 257 S.W.3d 583 (2007); *Dalrymple v. Dalrymple,* 74 Ark.App. 372, 47 S.W.3d 920 (2001)).

an independent cause, must meet the requirements for a compensable injury. *Ford v. Chemipulp Process, Inc.,* 63 Ark. App. 260, 977 S.W.2d 5 (1998).

■ In this case, the Commission found only that Gladden failed to prove that he suffered a specific-incident injury to his left shoulder based upon its findings that he lacked credibility and that he had a preexisting condition in his left shoulder. However, the Commission failed to take the next step and determine whether his preexisting left-shoulder condition was aggravated by the December 12, 2007 incident. The opinion of the Commission did not mention the aggravation issue. It did not acknowledge the law that provides that an employee can suffer a compensable injury even if he suffered from a preexisting injury. We cannot assume that the findings that the Commission relied upon to support its conclusion that Gladden failed to prove a specific-incident injury also apply to the aggravation issue to support the conclusion that he did not prove an aggravation.

Because evidence was presented on the aggravation issue but no findings were made on it, we have nothing to review, and we cannot reach the merits of Gladden's argument. Therefore, we reverse and remand to the Commission with directions that it determine whether, on December 12, 2007, Gladden suffered an aggravation of his preexisting left-shoulder injury.

Reversed and remanded.

ROBBINS, KINARD, and ABRAMSON, JJ., agree.

GLADWIN and HENRY, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting.

I would affirm the Commission because there is substantial evidence to support the finding that appellant failed to prove by a preponderance of the evidence that he sustained a compensable, left-shoulder injury arising out of and in the course of his employment on December 12, 2007. As a result of this finding, it is unnecessary to determine or address the issue of aggravation to appellant's left shoulder. .

The parties agreed that appellant sustained a compensable neck injury arising out of the accident on December 12, 2007, but litigated whether appellant sustained compensable injuries to his right and left shoulders. The Commission, which adopted the ALJ's findings, found that appellant did not prove that he suffered a left-shoulder injury on December 12, 2007.

On the day following the accident, appellant reported to the Dallas County Medical Center. The Center's reports show that appellant reported pain to his right shoulder and neck. The report makes no mention of a left-shoulder injury. Following this visit, appellant received treatment for his right shoulder from Dr. Payne, Dr. Pennington, and Dr. Schock. On May 1, 2008, Dr. Schock found that appellant did not have a shoulder injury. Appellant was ultimately treated by Dr. Lytle. Dr. Lytle's report from December 11, 2008, stated that appellant "is a 44–year–old man who complains of bilateral shoulder pain, the left side is worse." Surgery was performed on appellant's left shoulder on January 29, 2009. Appellant testified under oath that he had no previous problems with his shoulder, but his medical records showed otherwise.

Appellant must show proof by a preponderance of evidence that the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark.Code Ann. § 11–9–102(4)(A)(i)(4) (Supp.2009). It is the exclusive function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Murphy v. Forsgren, Inc.,* 99 Ark.App. 223, 258 S.W.3d 794

(2007). Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial evidence standard of review requires the court to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000).

The facts that (1) appellant did not report a left-shoulder injury the day after the accident; (2) Dr. Schock found that he had no shoulder injury on May 1, 2008; and (3) appellant was not truthful about previous treatment to his shoulder, support the finding that he did not suffer a compensable left-shoulder injury on December 17, 2007. This finding of fact makes it unnecessary to determine if appellant aggravated his shoulder on that day. Logic compels us to conclude that if appellant did not injure his left shoulder that day, he also did not aggravate it. I would affirm.

HENRY, J., joins.