An administrative law judge (ALJ) held a hearing on Ferris's claim. The ALJ considered the competing medical opinions from Drs. Arnold and Pearce. The ALJ found the medical opinion of Dr. Arnold, who was Ferris's treating physician, more credible than that of Dr. Pearce. The ALJ also considered testimony from Cheryl Edwards, Ferris's charge nurse when she worked at BRMC, and from Ferris. The ALJ concluded that Ferris and Edwards had "credibly testified" that Ferris had not been having problems with her knee before the February 2015 incident. Finally, the ALJ found that the fact that Ferris had some preexisting problems with her left knee was not problematic because the 2015 injury constituted an aggravation of a preexisting injury. The ALJ concluded as follows:
The evidence at bar establishes that the tripping over the IV cord on February 1, 2015 aggravated Claimant's preexisting left knee condition. The evidence shows that the surgery proposed by Dr. Arnold is causally related to her compensable injury. Consequently, Claimant has proven her entitlement to this treatment at Respondents' expense by a preponderance of the evidence.
[Citation omitted.] BRMC appealed to the full Commission, which in a 2-1 decision adopted and affirmed the ALJ's opinion. BRMC timely appealed the Commission's decision, and it now argues that the Commission's *152 decision is not supported by substantial evidence.
II. Standard of Review
Our court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Pratt v. Rheem Mfg. , 2013 Ark. App. 577, 2013 WL 5592516. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. Id. Normally, we review only the decision of the Commission, not that of the ALJ. Queen v. Nortel Networks, Inc. , 2012 Ark. App. 188, at 3, 2012 WL 639540. When, however, as here, the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, our court considers both the ALJ's opinion and the Commission's opinion. Mercy Hosp. Fort Smith v. Hendley , 2015 Ark. App. 527, at 1, 2015 WL 5734411.
III. Discussion
On appeal, BRMC argues that substantial evidence does not support the Commission's decision that Ferris proved her entitlement to additional medical treatment in the form of a surgical procedure to her left knee. While it admits that Ferris sustained a compensable injury to her left knee, it asserts that the procedure recommended by Dr. Arnold is not causally related to Ferris's on-the-job injury. BRMC argues that Ferris's need for additional surgery was because of her "years of failed surgeries." Ferris maintains that her need for surgery was a natural and probable result of the February 2015 fall.
Ferris bore the burden of proving by a preponderance of the evidence that the medical treatment recommended by Dr. Arnold was reasonable and necessary. Nucor Yamato Steel Co. v. Kennedy , 2017 Ark. App. 126, at 6, 513 S.W.3d 895, 899 ; Goyne v. Crabtree Contracting Co. , 2009 Ark. App. 200, 301 S.W.3d 16. What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of the medical evidence and to translate it into findings of fact. Nucor Yamato Steel, supra.
Here, the ALJ found that Ferris proved her entitlement to additional medical treatment. In so doing, the ALJ found Dr. Arnold's medical opinion more credible than Dr. Pearce's. In reaching this credibility determination, the ALJ heard unrefuted testimony that the IME performed by Dr. Pearce lasted ten or fifteen minutes at the most and that Dr. Pearce never physically examined Ferris's knee during the IME. In contrast, Dr. Arnold treated Ferris seven or eight times, and Ferris testified that he "absolutely listens" to her.
It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the testimony. Nichols v. Micro Plastics, Inc. , 2015 Ark. App. 134, 2015 WL 826691. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. Moore v. Ark. State Highway & Transp. Dep't , 2013 Ark. App. 752, 2013 WL 6686146.
Admittedly, Ferris had an extensive history of problems with her left knee before her compensable injury. The ALJ's opinion acknowledged that Ferris had preexisting problems with her left knee. The ALJ nonetheless concluded that the February 2015 incident aggravated those problems and that the need for surgery was causally related to the February 2015 incident. Arkansas law is clear that *153 an employer takes the employee as it finds him or her, and employment circumstances that aggravate preexisting conditions are compensable. Heritage Baptist Temple v. Robison , 82 Ark. App. 460, 464, 120 S.W.3d 150, 152 (2003). An aggravation is a new injury resulting from an independent incident, and the aggravation of a preexisting, noncompensable condition by a compensable injury is, itself, compensable. Firestone Bldg. Prods. v. Hopson , 2013 Ark. App. 618, at 2, 430 S.W.3d 162, 164 ; Williams v. L & W Janitorial, Inc. , 85 Ark. App. 1, 9, 145 S.W.3d 383, 388 (2004). A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which compensation is sought. Emergency Ambulance Serv., Inc. v. Burnett , 2015 Ark. App. 288, at 13, 462 S.W.3d 369, 376 ; St. Vincent Infirmary Med. Ctr. v. Brown , 53 Ark. App. 30, 917 S.W.2d 550 (1996).
Viewing the evidence in the light most favorable to the Commission's decision, we disagree with BRMC's assertion and conclude that the decision is supported by substantial evidence. The ALJ credited Ferris's and Edwards's testimony that before the 2015 fall, Ferris experienced no problems with her knee. Specifically, Ferris testified about the five procedures she received before February 2015. Although she stated that the most recent one had been in 2008,[1] she had not had any serious trouble with her leg since then. Edwards corroborated this testimony. She testified that Ferris was able to do her job without any problems and never complained about her knee or had to use a cane. After the injury, however, Ferris had to wear a metal brace and use crutches, could not drive, and was unable to do anything but sit-down jobs such as answering phones or doing secretarial work. Based on this credible testimony, the ALJ found that the need for surgery was causally related to Ferris's compensable injury. These credibility determinations were entirely the ALJ's to make. See Univ. of Ark. Pub. Employee Claims Div. v. Tocci , 2015 Ark. App. 505, at 3, 471 S.W.3d 218, 220 (noting that we defer to the Commission's findings on what testimony it deems to be credible, the resolution of conflicting evidence is a question of fact for the Commission, and the Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force).
Here, the ALJ and the Commission weighed and evaluated competing medical evidence, assessed the credibility of the witnesses, and found that BRMC, the employer, is required to provide Ferris, an injured employee, the medical services suggested by Dr. Arnold as reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Supp. 2017). Our standard of review requires us to defer to the Commission's decision.
Affirmed.
Vaught and Murphy, JJ., agree.

Ferris's medical records indicated that her last surgery before the February 2015 injury was actually in 2005, not 2008.